## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRENT TOWNLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 03-CV-0618-MJR |
| ) | |
| TIMOTHY ADESANYA, ) | |
| ) | |
| Defendant. ) | |

## ORDER FOLLOWING BENCH TRIAL

**REAGAN, District Judge:**

### A. Introduction

In 2001, Brent Townley was an inmate at the Federal Correctional Institution at Greenville, Illinois. While playing softball on September 29, 2001, Townley injured his right knee. On September 23, 2003, Townley filed suit under 42 U.S.C. § 1983 against three defendants—Warden Darlene Veltri, Frank Labore, and Timothy Adesanya—alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

On December 9, 2004, the Court dismissed Veltri from the case because the complaint stated no claim against her, and supervisory liability does not apply to civil rights actions (Doc. 10). On March 14, 2006, the Court adopted Magistrate Judge Donald G. Wilkerson's Report, dismissed Labore, and limited Townley's possible recovery against Adesanya to damages incurred from September 29, 2001 through October 9, 2001 (Doc. 32).

The case proceeded to bench trial before the undersigned District Judge on September 25, 2007. At that time, Townley raised seven separate claims. These seven claims were that Adesanya, a Physician's Assistant employed by the United States Bureau of Prisons, violated Townley's Eighth Amendment rights because he was deliberately indifferent to Townley's serious

medical needs in that: (1) Adesanya accused Townley of faking his injuries, (2) Adesanya declined to prescribe or provide pain medication, (3) Adesanya maintained an attitude of indifference toward Townley's injuries, (4) Townley had to argue with Adesanya to obtain pain medication and a crutch, (5) Adesanya failed to order and take an x-ray, (6) Adesanya failed to perform a physical examination, and (7) Adesanya failed to perform a Drawer's Test.

At the close of Townley's case, Adesanya moved for judgment as a matter of law under **FEDERAL RULE OF CIVIL PROCEDURE 52(c)**. Trans. pp. 116-19. As a result of the findings of fact and conclusions of law thoroughly explained on the record, the Court partially granted Adesanya's Rule 52 motion and entered judgment as a matter of law in favor of Adesanya as to the first four claims. Trans. pp. 119-21. The Court took the motion for judgment as a matter of law under advisement as to the three remaining claims.

At the close of all the evidence, the Court granted judgment as a matter of law in favor of Adesanya and against Townley on the fifth claim—that Adesanya failed to order and take an x-ray—as a result of the findings of fact and conclusions of law thoroughly stated on the record. Trans. pp. 141-42.

Consequently, two claims remain at this point: that Adesanya violated Townley's Eighth Amendment rights by failing to perform a physical examination, and that Adesanya violated Townley's Eighth Amendment rights by failing to perform a Drawer's Test. As to these claims, the Court ordered the parties to file their closing arguments according to the prescribed deadlines. Townley filed his closing argument on October 11, 2007, and Adesanya filed his closing argument on October 21, 2007 (Docs. 81 & 82).

Pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 52**, the Court now finds and

concludes as follows.

## B. Findings of Fact

1. On Saturday, September 29, 2001, Brent Townley was serving a sentence of 168 months for conspiracy to distribute methamphetamine and was housed at the Federal Correctional Institution in Greenville, Illinois (FCI Greenville). Trans. pp. 9-10.

2. At 6:30 p.m. on that date, while playing softball, Townley slid into third base and injured his right knee. Trans. p. 10. Townley heard a loud pop upon injury and experienced pain from his hip to his ankle. Trans. pp. 10-11. The pain was excrutiating, and Townley described it as the worst pain he has ever experienced. Trans. p. 11.

3. Timothy Adesanya, a physician's assistant (P.A.) employed by the prison, responded to a call regarding Townley's injury and brought a medical cart to the softball field. Trans. p. 11.

4. Adesanya used the medical cart to transport Townley to the prison's medical facility. Trans. p. 12.

5. Adesanya obtained a medical degree from Universidad Autonoma de Guadalajara, Jalisco, Mexico in 1985 and was certified as a P.A. by the United States Air Force in 1997. Trans. pp. 60-61; Def. Exh. 6. Adesanya has worked as a P.A. with the Bureau of Prisons for approximately 16 years and has been employed at FCI Greenville from 1994 to 1995 and from 1998 to the present. Trans. p. 60; Def. Exh. 6.

6. Townley and Adesanya entered the medical facility at the side door, which is located next to the emergency room. Trans. p. 95. They entered an examination room where Adesanya assessed Townley's injury while Townley sat on an examining table. Trans. p. 96.

7. Adesanya filled out an injury assessment form detailing Townley's symptoms and injury, and Townley signed the form at the conclusion of the examination. Pl. Exh. 1A; Trans. pp. 76, 96-99.

8. Townley did not tell Adesanya that he heard his knee pop. Trans. pp. 70, 103. Additionally, the injury assessment form that Adesanya filled out upon examining Townley does not indicate that Townley told Adesanya his knee had popped. Pl. Exh. 1A; Trans. p. 70.

9. After a knee injury, a Drawer's Test is generally used to determine whether the knee sustained ligament damage or a broken bone, or whether the knee is stable and simply sustained a soft tissue injury (i.e., a sprain). Trans. pp. 99-103.

10. A Drawer's Test is performed by placing the patient on the examination table in either a sitting position with his legs dangling from the examination table or else laying down with his legs bent at a 45-degree angle. Trans. pp. 16, 100. The examiner then holds the knee and moves it back and forth, as if pulling a drawer open, in order to determine if there how much give is in the knee. Trans. pp. 16, 101.

11. A Drawer's Test cannot be performed without physically touching the patient. Trans. pp. 35, 100-01.

12. During the September 29, 2001 examination, Adesanya performed a Drawer's Test on Townley's knee. Pl. Exh. 1A; Trans. pp. 96, 99-102. The test was negative, indicating a soft tissue injury only. Pl. Exh. 1A; Trans. pp. 96, 99-102.

13. Adesanya also performed a range of motion test, which indicated that Townley had full range of motion. Pl. Exh. 1A; Trans. p. 99.

14. Townley told Adesanya that he had pain in his knee, but Adesanya observed

no swelling or bruising, and there was no sign of blood under the kneecap.  Pl. Exh. 1A; Trans. p. 99.

15. Adesanya also compared Townley's left and right knees, which appeared to be the same size.  Trans. pp. 99-100.

16. Adesanya also felt Townley's knee within his hands in order to determine whether the knee was warm.  Trans. p. 100.  Warmth at the situs of injury might indicate a fracture or ligament tear.  Trans. p. 100.  Townley's knee was not warm.  Trans. p. 100.

17. All of the tests indicated that Townley had a soft tissue injury.  Trans. pp. 70, 99-102.

18. Knowing that Townley would be unable to fill any prescription over the weekend, Adesanya gave Townley three packages of Motrin, each package containing four 400 mg tablets.  Trans. pp. 73, 104.  Adesanya also gave Townley a prescription for thirty 800 mg tablets of Motrin, which Townley could fill on Monday, October 1, 2001.  Pl. Exh. 1A; Trans. pp. 73, 104.  Adesanya instructed Townley to take one tablet three times a day, and Adesanya told him to take the medication with food to avoid aggravation of a chronic stomach condition from which Townley suffers.  Pl. Exh. 1A; Trans. p. 104.

19. Adesanya provided Townley with one crutch to assist him in walking.  Pl. Exh. 1B; Trans. p. 104.  Adesanya also gave Townley a form stating that he could have the crutch until Monday, October, 1, 2001.  Pl. Exh. 1B; Trans. p. 104.

20. Adesanya instructed Townley to elevate the knee and apply a cold compress to avoid swelling.  Pl. Exh. 1A; Trans. p. 104.

21. Finally, Adesanya told Townley to follow up with him on Monday, October

1, 2001 during the morning sick call. Pl. Exh. 1A; Trans. p. 105.

22. Townley elevated his knee and placed ice on it, but it became swollen and began to bruise. Trans. p. 18. The pain did not subside, despite the fact that Townley took the Motrin he had obtained from Adesanya. Trans. pp. 18, 20.

23. Townley used all of the Motrin by noon on Sunday, September 30, 2001. Trans. p. 33. Though Townley might have been able to obtain more Motrin had he asked for it, he did not take the initiative to obtain it due to the distance he would have to travel. Trans. p. 34.

24. Townley had difficulty walking with the crutch and feared taking showers due to the possibility that he might be attacked by other inmates. Trans. pp. 18-19, 42-43. He also had concerns that his knee injury would interfere with his ability to work in his trade as a carpenter once he was released from prison. Trans. p. 30.

25. On October 1, 2001, Townley visited Adesanya again during the morning sick call. Trans. pp. 18-19, 106; Pl. Exh. 1E. Adesanya re-examined the knee and found that Townley still had full range of motion, though there was mild swelling and his pain had not subsided. Pl. Exh. 1E; Trans. p. 107. Additionally, Adesanya performed another Drawer's Test, which was negative. Pl. Exh. 1E; Trans. p. 107. Finally, Adesanya performed a reflex test, and the results of the reflex test were normal. Pl. Exh. 1E; Trans. p. 107.

26. Adesanya then instructed Townley to continue to elevate the knee and apply a cold compress. Pl. Exh. 1E; Trans. p. 107. Adesanya extended Townley's Motrin prescription so that he could obtain one refill. Trans. p. 107-08; Pl. Exh. 1F. Adesanya also gave Townley a form so that he could continue using the crutch. Pl. Exh. 1C; Trans. p. 108. Finally, Adesanya gave Townley three days of work idle, excusing Townley from work for three days. Pl. Exh. 1C; Trans.

pp. 80, 108.

27. At this time, Townley requested that Adesanya perform an x-ray on the knee. Trans. p. 19. Adesanya refused to do so because it was not clinically indicated, as Townley only presented with a soft tissue injury and an x-ray would not reveal any relevant information for that type of injury. Trans. p. 20; Pl. Exh. 1E.

28. Because Adesanya would not order an x-ray, Townley stated that he did not want Adesanya to provide further treatment. Trans. p. 83; Pl. Exh. 1E.

29. Adesanya completed a report of this visit, describing Townley's symptoms and progress, the prescribed treatment, and Townley's request not to see Adesanya during future visits. Pl. Exh. 1E.

30. On October 3, 2001, Townley again visited Adesanya during sick call. Trans. p. 110; Pl. Exh. 1E. Adesanya noted that Townley had swelling in the knee and pain upon flexion. Trans. p. 110; Pl. Exh. 1E.

31. Adesanya performed another Drawer's Test, which was negative. Pl. Exh. 1E; Trans. p. 110.

32. Adesanya noticed that Townley had been walking on the knee, as he came without the crutch or the ace bandage. Pl. Exh. 1E; Trans. p. 110. Additionally, Townley reported that he had not been applying ice or following the treatment plan. Pl. Exh. 1E; Trans. pp. 110-11.

33. Townley also indicated that the Motrin had not been helping his pain, so Adesanya discontinued the medication and gave him a prescription for thirty 50 mg tablets of Naproxen. Trans. p. 111; Pl. Exhs. 1E, 1F. Adesanya instructed Townley to take one tablet twice a day with food. Pl. Exh. 1F; Trans. p. 111.

34. Adesanya again instructed Townley about the importance of resting the knee, elevating the knee, and applying ice. Pl. Exh. 1E; Trans. p. 111. Also, Adesanya gave Townley a larger ace bandage. Pl. Exh. 1E; Trans. p. 111.

35. Adesanya indicated that Townley must have walked approximately 500 yards from his housing unit to visit him that morning. Trans. p. 113. Adesanya stated that the fact that Townley could walk this distance without a crutch further indicated that he only had a soft tissue injury rather than a torn ligament. Trans. p. 113. Additionally, walking such a distance without a crutch could have aggravated any existing injury. Trans. p. 113.

36. Dr. Thomas Dawdy obtained a medical degree from the University of Illinois College of Medicine in 1973 and has been employed at FCI Greenville since 1994 as the prison's Clinical Director. Def. Exh. 7; Trans. p. 122. As Clincial Director, Dr. Dawdy provides patient care and oversees the care provided by physician's assistants. Def. Exh. 7; Trans. p. 122.

37. Dr. Dawdy stated that he had reviewed Townley's records from September 29, 2001 (Pl. Exh. 1A), and that based upon a reasonable degree of medical certainty, an x-ray was not medically necessary at that time. Trans. pp. 124, 126. Dr. Dawdy based his opinion on his medical experience, medical knowledge, the factual circumstances of the injury, and the lack of any indication that there was a fracture or dislocation in the knee joint. Trans. p. 124.

38. Dr. Dawdy also stated that he had reviewed Townley's records from October 1, 2001 (Pl. Exh. 1E), and that based upon a reasonable degree of medical certainty, an x-ray was not medically necessary at that time. Trans. pp. 125, 126.

39. Additionally, Dr. Dawdy stated that he had reviewed Townley's records from October 3, 2001 (Pl. Exh. 1E), and that based upon a reasonable degree of medical certainty, an x-

ray was not medically necessary at that time. Trans. p. 126.

40. An x-ray of a knee could be useful in finding signs of fracture or dislocation in the knee. Trans. p. 126. On the other hand, an x-ray would not show information related to a soft tissue injury or a ligament tear. Trans. pp. 126-27.

41. No fracture was ever found in Townley's knee. Trans. pp. 114, 127.

42. In Dr. Dawdy's medical opinion, Adesanya's failure to order an x-ray did not contribute to the delay in surgically repairing Townley's later found torn ligament, because an x-ray would not have revealed information helpful in diagnosing a soft tissue injury. Trans. pp. 126-27.

43. The Court finds the testimony of Dr. Dawdy to be credible and persuasive.

44. On October 9, 2001, Townley visited P.A. Graciano Arroyo. Pl. Exh. 1E; Trans. pp. 55-56, 128. Arroyo performed a Drawer's Test, which was negative. Trans. p. 47; Pl. Exh. 1E. However, Arroyo ordered an x-ray of Townley's knee. Pl. Exh. 1E; Trans. p. 128.

45. On October 19, 2001, Adesanya took an x-ray of Townley's knee. Trans. pp. 57, 86, 129.

46. On November 2, 2001, Dr. Rasat Nashed reviewed the x-ray and concluded that it showed no bone abnormality or dislocation. Pl. Exh. 1G; Trans. p. 130. However, the x-ray did show effusion around the knee joint, or stated another way, the presence of fluid or blood around the knee joint. Pl. Exh. 1G; Trans. p. 131.

47. Dr. Nashed's objective findings on November 2, 2001, after performing a physical examination and considering the x-ray, were that Townley appeared to have a medial collateral ligament tear and an anterior cruciate ligament (ACL) tear in his right knee. Pl. Exh. 1G; Trans. pp. 28, 48, 134. As a result, Dr. Nashed ordered an MRI. Pl. Exh. 1G; Trans. p. 134.

48. On March 15, 2002, Dr. Nashed reviewed the MRI and found that Townley did in fact have an ACL tear in his right knee. Trans. p. 134; Pl. Exh. 1H. Dr. Nashed also saw evidence of a medial meniscus tear. Trans. p. 134; Pl. Exh. 1H.

49. A torn ACL and a torn medial meniscus are both significant knee injuries. Trans. p. 134.

50. On February 15, 2005, Townley had surgery to repair the torn ACL. Pl. Exh. 1P; Trans. pp. 28, 49.

51. Townley's knee has healed and he is able to function normally. Trans. p. 29. However, he does wear a knee brace when playing sports. Trans. pp. 29, 31-32, 52.

52. As is clear from the above findings, the Court finds the testimony of Adesanya credible and accepts it over Townley's testimony where the two vary. For example, Townley testified that Adesanya never physically touched him and never performed a Drawer's Test during any of the examinations between September 29, 2001 and October 3, 2001. Adesanya testified to the contrary. The Court chooses to accept Adesanya's testimony, which was more persuasive and was often corroborated by written records.

### C. Conclusions of Law

1. The Court exercises subject matter jurisdiction over this 42 U.S.C. § 1983 action under the federal question statute, **28 U.S.C. § 1331**.

2. The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. ***Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994)**.

3. This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it does not include "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, **429 U.S. at 106;** *see also Jones v. Simek*, **193 F.3d 485, 489 (7th Cir. 1999);** *Steele v. Choi,* **82 F.3d 175, 178 (7th Cir. 1996), cert. denied, 519 U.S. 897 (1996)**.

4. In order to prevail under this theory, a prisoner must satisfy two requirements:

> The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at [834], 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id*.

***Vance v. Peters*, 97 F.3d 987, 991-92 (7th Cir. 1996), cert. denied, 520 U.S. 1230 (1997)**.

5. However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, **511 U.S. at 842.**

6. The Seventh Circuit's decisions following this standard require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. A defendant's inadvertent error, negligence, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. "Neglect of a prisoner's health becomes a

violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health—that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'" **Williams v. O'Leary, 55 F.3d 320, 324 (7th Cir. 1995), cert. denied, 516 U.S. 993 (1995);** *see also Steele***, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*);** *Miller v. Neathery***, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction)**.

7. However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would actually occur. *Haley v. Gross***, 86 F.3d 630, 641 (7th Cir. 1996)**.

8. The questions before this Court are whether Townley had an objectively serious medical need during the period of September 29, 2001 through October 9, 2001, and, if so, whether Adesanya's treatment constitutes deliberate indifference to that medical need.

9. First, it is not clear that Townley had an objectively serious medical need during the relevant period. The physical presentation of Townley's knee indicated a soft tissue injury, such as a knee sprain, rather than a ligament tear. There was no apparent bruising or swelling on September 29, 2001, though swelling was apparent on October 1, 2001 and October 3, 2001. However, by October 3, 2001 it was clear that Townley had not been following all of the prescribed treatment, and this may have accounted for the increased swelling.

10. Additionally, a Drawer's Test was performed on each occasion and the results were negative each time.

11. Moreover, on October 3, 2001, Townley was able to walk from his housing unit to the medical center without the aid of a crutch.

12. In light of the evidence at trial, Townley has not proven that he had a torn ACL or a torn medial meniscus at any time between September 29, 2001 and October 9, 2001. The simple fact that Dr. Nashed found evidence of a possible torn ACL and a torn medial meniscus on November 2, 2001 is not enough to support a finding that these injuries actually existed prior to October 9, 2001, especially in light of Townley's failure to follow Adesanya's treatment plan, which may have aggravated a less serious injury. Objectively, it appears that Townley had a soft tissue injury during this period.

13. The lack of credible evidence that Townley had a torn ACL rather than a soft tissue injury between September 29, 2001 and October 9, 2001 precludes this Court from finding that Townley had an objectively serious medical need.

14. Assuming arguendo that Townley did have an objectively serious medical need during the relevant period, Townley still failed to prove that Adesanya was deliberately indifferent to that medical need.

15. Townley alleges that Adesanya's treatment constitutes deliberate indifference because he failed to perform a Drawer's Test and failed to perform a physical examination of the patient's knee.[1] However, the evidence in the case does not support these allegations.

16. The Court finds the testimony of Adesanya both credible and persuasive, and accepts it over Townley's testimony where the two vary. As such, the Court finds that Adesanya

---

[1] As noted above, Townley did allege that other conduct by Adesanya constituted deliberate indifference, but the Court previously granted Adesanya's Rule 52 motion for judgment as a matter of law as to each of those allegations.

performed a Drawer's Test each time he examined Townley—September 29, 2001, October, 1, 2001, and October 3, 2001—and that each test was negative.

17. Additionally, it is clear from the record that Adesanya performed a physical examination of Townley's knee during each of the visits, as a Drawer's Test cannot be performed without physically touching the patient's knee. Moreover, Adesanya examined Townley's knee with his hands to determine whether there was any sign of warmth, which if present could indicate a torn ligament or fracture.

18. A prisoner's dissatisfaction with a physician's course of treatment is not enough to establish deliberate indifference. *See Snipes v. DeTella*, **95 F.3d 586, 592 (7th Cir. 1996)**. "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Id*. "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.'" *Id*. **(quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir.1974), vacated and remanded on other grounds sub nom. *Cannon v. Thomas*, 419 U.S. 813 (1974))**.

18. There is no credible evidence that Adesanya failed to perform a Drawer's Test or failed to physically examine Townley on the dates in question.

19. Consequently, the Court finds that Townley failed to prove that Adesanya was deliberately indifferent to a serious medical need during the period of September 29, 2001 through October 9, 2001.

20. Accordingly, the Court need not reach the question of whether Townley proved any damages.

### D. Final Conclusion

Having carefully reviewed the evidence in this § 1983 action, the Court **FINDS** in favor of the Defendant, Timothy Adesanya, and against the Plaintiff, Brent Townley. The Clerk of the Court is **DIRECTED** to enter judgment in favor of Adesanya and against Townley. The Court thanks attorney Sedey for her impressive advocacy and for accepting this appointment on behalf of the Plaintiff.

**IT IS SO ORDERED.**

**DATED this 31st day of March 2008.**

>  **s/ Michael J. Reagan**
>  **MICHAEL J. REAGAN**
>  **United States District Judge**